UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHANTI R. GUY,

Plaintiff,

v.

MELINDA BRAMAN et al.,

Defendants.

Case No. 1:26-cv-615

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

## I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events

about which he complains occurred at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. Plaintiff sues the following MTU staff: Warden Melinda Braman, Captain Unknown Smith, Hearing Investigator Unknown Lake, Food Service Director Unknown Anothony, and Food Service Steward Unknown Perrien. (Compl., ECF No. 1, PageID.2.) Plaintiff sues all Defendants in both their individual and official capacity. (*Id.*)

In Plaintiff's complaint,[1] he alleges that in March or April 2025, Defendant Smith "had blinders placed on the chow line," which prohibited prisoners from seeing the food trays as they

---

[1] On June 2, 2026, Plaintiff submitted supplemental allegations and requested that they be added to his complaint. (Suppl. Compl., ECF No. 5.) In this supplemental pleading, Plaintiff presents additional allegations regarding nonparty Lieutenant Unknown Miller and unidentified "nurses," unidentified "officers," and an unnamed Resident Unit Specialist (ARUS), all of whom are also non-parties. (*Id.*, PageID.25–26.) Plaintiff's supplemental pleading does not present any factual allegations regarding the named Defendants in this action and does not seek to add any individual as a named Defendant. (*Id.*, PageID.25–26.)

Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against the non-parties in the supplemental complaint will be dismissed for failure to state a claim upon which relief may be granted.

Moreover, Plaintiff's supplemental pleading also alleges conduct attributed to unidentified "nurses" and "officers." (Suppl. Compl., ECF No. 5, PageID.25–26.) But summary reference to vague groups of individuals, such as "officers" does not support the reasonable inference that any of the named Defendants are liable for the alleged constitutional violation. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019). These allegations fail to allege, with particularity, facts that demonstrate what any of the named Defendants did to violate the constitutional rights asserted in Plaintiff's supplemental allegations. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011). Moreover, the allegations that involve nurses, officers, and an ARUS are clearly not references to the named Defendants, who are identified in the complaint as the Warden, a Captain, a Hearing Investigator, a Food Service Director, and a Food Service Steward. (Suppl., Compl., ECF No. 5, PageID.25–26; Compl., ECF No. 1, PageID.2.)

were prepared. (*Id*., PageID.3.) Plaintiff believes that this is when "the staff" began poisoning his food. (*Id*.) Plaintiff alleges that on unspecified dates thereafter, he had to wait longer than the other prisoners to receive his food tray. (*Id*.)

In May 2025, Plaintiff began experiencing "pain in the abdomen area[.]" (*Id*.) Plaintiff then "started watching" when he went to get food and noticed Defendant Perrien was watching him. (*Id*.) Plaintiff alleges that when he neared the front of the food line, Defendant Perrien "would have the food placed on the line," and that "she made sure that [Plaintiff] got the food [Defendant Perrien] had placed on the line." (*Id*.) Plaintiff would let others go ahead of him in line, or switch from one side to the other, and Plaintiff alleges that Defendant Perrien "would still make sure that [Plaintiff] got the food [Defendant Perrien] had planned for [Plaintiff.]" (*Id*.) Plaintiff does not specify how often, or on what dates, this occurred. (*See id*.)

On September 7, 2025, Plaintiff filed a grievance against Defendant Perrien, which alleged that Defendant Perrien had moved food trays to ensure that a specific tray went to Plaintiff, "[l]ike she [had] been tampering with [Plaintiff's] food[.]" (*Id*.) Plaintiff alleged in this grievance that he had lost a lot of weight. (*Id*.) This grievance was denied, despite Plaintiff's allegation that "the people that reviewed" the grievance knew Plaintiff was telling the truth, and "other staff" knew that this was occurring. (*Id*., PageID.4.) Plaintiff alleges that "this" is still occurring and that "more staff" are now involved. (*Id*.) Plaintiff alleges that on an unspecified date he told "healthcare" about the pain, and the lab results showed that his "kidney numbers" had dropped in the last year. (*Id*.)

---

In summary, because Plaintiff's supplemental pleading does not contain any allegations regarding the named Defendants, Plaintiff's supplemental complaint fails to state a claim. Accordingly, the Court will dismiss the claims contained in the supplemental complaint. (ECF No. 5.)

On February 10, 2026, Plaintiff submitted another grievance. (*Id.*) In this grievance, Plaintiff alleged that on February 7, 2026, "they had to switch pans for sandwiches" when Plaintiff got to the front of the food line, and Plaintiff saw nonparty Kitchen Steward Unknown Strauss "directing the worker to a tray they had planned for [Plaintiff]." (*Id.*) As of the date that Plaintiff filed his complaint, the grievance was still pending. (*Id.*)

Based on the foregoing allegations, Plaintiff raises Eighth Amendment claims regarding the alleged poisoning of his food and Fourteenth Amendment Procedural Due Process Clause claims regarding the grievance process. Plaintiff seeks injunctive relief in the form of a doctor finding out "what this staff have done to [Plaintiff]" and to "heal [Plaintiff] if possible," as well as monetary damages in the amount of $100 million. (*Id.*, PageID.5.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Official Capacity Claims**

Plaintiff sues all named Defendants in both their individual and official capacity. (Compl., ECF No. 1, PageID.2.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States

Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks both injunctive relief and monetary damages. (Compl., ECF No. 1, PageID.5.) As noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against the named Defendants in their official capacities. *See Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

In addition to monetary damages, Plaintiff also seeks injunctive relief. (Compl., ECF No. 1, PageID.5.) Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at MTU, which is where he avers that the named Defendants are employed. Thus, Plaintiff cannot maintain his claims for injunctive relief against Defendants.

Accordingly, Plaintiff has failed to state a claim against the named Defendants in their official capacities, and the Court will dismiss those claims.

### B. Claims Against Defendants Braman, Lake, and Anthony

Plaintiff names Defendants Braman, Lake, and Anthony as Defendants in this matter. (Compl., ECF No. 1, PageID.2.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named

as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Here, Plaintiff does not name Defendants Braman, Lake, or Anthony in the body of his complaint. (*See* Compl., ECF No. 1, PageID.3–4; Suppl. Compl., ECF No. 5, PageID.25–26.) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Plaintiff's claims against Defendants Braman, Lake, and Anthony are subject to dismissal because Plaintiff's complaint does not contain any allegations of specific conduct attributed to any of those named Defendants. *See Gilmore*, 92 F. App'x at 190. Plaintiff's complaint does include allegations regarding the conduct of "staff" and "officers," (*see* Compl., ECF No. 1, PageID.3, 4; Suppl. Compl., ECF No 5, PageID.25–26), but "[s]ummary reference to a single, five-headed 'Defendants' does not support

a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted).

To the extent that Plaintiff seeks to hold Defendants Braman, Lake, or Anthony liable due to their supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee* [*v. Luttrell*], 199 F.3d [295,] 300 [(6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993). Because Plaintiff's complaint contains no factual allegations regarding Defendants Braman, Lake, or Anthony, Plaintiff has failed to show that Defendants Braman, Lake, or Anthony "implicitly authorized, approved, or knowingly acquiesced" any of the conduct alleged in Plaintiff's complaint. *See Peatross*, 818 F.3d at 242.

Accordingly, for the reasons set forth above, Plaintiff's claims against Defendants Braman, Lake, and Anthony will be dismissed for failure to state a claim.

**C. Eighth Amendment Claims**

Plaintiff alleges that he has been served poisoned food, which has made him sick. (Compl., ECF No. 1, PageID.3–4.) The Court construes these allegations as raising Eighth Amendment conditions of confinement claims.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th

Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

**1. Claims Against Defendant Perrien**

Plaintiff alleges that after he felt sick in May 2025, he began watching Defendant Perrien. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that on an unspecified number of occasions on unspecified dates, Defendant Perrien would "make sure that [Plaintiff] got the food [Defendant Perrien] had placed on the line," or that Defendant Perrien would "make sure [Plaintiff] got the food that [Defendant Perrien] had planned for [Plaintiff]." (*Id.*) Plaintiff concludes that Defendant Perrien "was poisoning [Plaintiff's] food[.]" (*Id.*)

Plaintiff's factual allegations regarding Defendant Perrien are insufficient to state an Eighth Amendment claim. As an initial matter, Plaintiff's complaint does not specify how many times Defendant Perrien took steps to ensure that Plaintiff received a specific food tray. For example, Plaintiff's complaint does not specify whether Defendant Perrien engaged in these actions on one occasion or at every meal service over an extended period of time. Without any allegation

regarding the frequency of these occurrences, Plaintiff's conclusion that these actions were part of an ongoing plan to feed him poisoned food is unsupported by sufficient factual allegations.

Additionally, Plaintiff's conclusion that Defendant Perrien was poisoning his food is based on the allegation that Defendant Perrien had specific food trays that she wanted Plaintiff to receive. (Compl., ECF No. 1, PageID.3.) But Plaintiff's conclusion that Defendant Perrien wanted Plaintiff to receive specific food trays is not supported by sufficient *factual* allegations. Plaintiff's vague allegations that Defendant Perrien was watching him, that Defendant Perrien "had the food placed on the line," or that Defendant Perrien had "the food moved" do not support Plaintiff's conclusion that Defendant Perrien had a specific food tray that she wanted Plaintiff to receive. (*See id*.)

Moreover, even if the Court assumed that Defendant Perrien took steps to ensure that Plaintiff received a specific food tray, Plaintiff alleges insufficient facts to show that when Defendant Perrien gave Plaintiff specific food trays, she did this in order to give Plaintiff poisoned food. Plaintiff's factual allegations show that in May 2025, he "got sick with pain in the abdomen area," and Plaintiff concludes that this occurred because his food was being poisoned; but there are no *factual* allegations to connect this abdominal pain to any alleged poisoning of Plaintiff's food. (*Id*.) For example, Plaintiff does not allege that he witnessed Defendant Perrien do anything that could be considered tampering with Plaintiff's food or that Defendant Perrien, or anyone else, said anything to Plaintiff that could suggest that his food was being poisoned. Instead, Plaintiff concludes that because he had abdominal pain and Defendant Perrien had specific food trays that she wanted Plaintiff to receive, the food on those trays must have contained poison. However, besides Plaintiff's conclusory assertion, there are no *facts* to show that the food on Plaintiff's trays was poisoned, let alone that Defendant Perrien had poisoned Plaintiff's food.

Accordingly, for these reasons, Plaintiff's Eighth Amendment claim against Defendant Perrien will be dismissed for failure to state a claim.

**2. Claims Against Defendant Smith**

Plaintiff alleges that in March or April 2025, Defendant Smith "had blinders placed on the chow line." (Compl., ECF No. 1, PageID.3.) This lone allegation regarding Defendant Smith is insufficient to show that Defendant Smith committed an Eighth Amendment violation.

As discussed in the context of the claim against Defendant Perrien, the factual allegations in Plaintiff's complaint are insufficient to support the conclusion that he was receiving poisoned food. The allegation regarding Defendant Smith—that he "had blinders placed on the chow line" approximately one to two months before Plaintiff started feeling ill— does not demonstrate that Defendant Smith violated Plaintiff's constitutional rights. (*Id.*); *see Heyne*, 655 F.3d at 564. Indeed, Plaintiff does not allege that Defendant Smith had any interaction with Plaintiff's food, let alone that Defendant Smith used that opportunity to tamper with Plaintiff's food. In fact, Plaintiff does not even allege that Defendant Smith poisoned Plaintiff's food. The allegation that weeks or months before Plaintiff began feeling ill, Defendant Smith "had blinders placed on the chow line" is wholly insufficient to support the conclusion that Defendant Smith personally participated in the alleged Eighth Amendment violation regarding Plaintiff's food.

Accordingly, Plaintiff has failed to state an Eighth Amendment claim against Defendant Smith, and the Court will dismiss that claim.

**3. Claims Against Unidentified Individuals and Nonparties**

Throughout Plaintiff's complaint, he attributes conduct regarding the handling of his food to unidentified individuals such as "staff" or "they," as well as nonparty Strauss. (Compl., ECF No. 1, PageID.3, 4.)

As set forth above, Plaintiff's references to "staff" or "they" are insufficient to show that any individuals, let alone named Defendants, were personally involved in the actions that Plaintiff attributes to these groups of people, and to the extent that Plaintiff intended to bring any claims against non-parties in the complaint, he fails to state any claim against these non-parties upon which relief may be granted. *See supra* note 1.

Moreover, even if these allegations were attributed to the named Defendants, they do not show a violation of Plaintiff's constitutional rights. Plaintiff alleges that "they had to switch pans for sandwiches" right as he arrived at the front of the line and concludes that "they" had a specific food tray "planned for" Plaintiff. (Compl., ECF No. 1, PageID.4.) Like the allegations against Defendant Perrien, regardless of the fact that these allegations pertain to unidentified individuals or nonparties, the allegations that certain individuals had specific food trays "planned for" Plaintiff are insufficient to show that the food on those trays contained poison.

Accordingly, all intended claims against non-parties will be dismissed for failure to state a claim.

### D. Fourteenth Amendment Procedural Due Process Clause Claims

Plaintiff alleges that he submitted a grievance on September 7, 2025, in which he claimed that his food was being poisoned. (Compl., ECF No. 1, PageID.3–4.) Plaintiff states that his grievance was rejected even though "the people that reviewed [Plaintiff's] grievance knew [he] was telling the truth" and "other staff knew this was going on[.]" (*Id.*, PageID.4.) Plaintiff also alleges that he submitted another grievance on February 10, 2026, which was still pending at the time he initiated this case on February 24, 2026. (*Id.*, PageID.4.) The Court construes these allegations as raising a claim under the Fourteenth Amendment Procedural Due Process Clause.

As an initial matter, Plaintiff's allegations regarding his grievance attribute conduct to "people that reviewed [his] grievance," and "other staff." (*Id.*) Plaintiff alleges no facts to show

that any of the named Defendants were involved in this grievance process, which makes this claim subject to dismissal because these allegations against unspecified individuals are insufficient to show that any of the named Defendants violated Plaintiff's constitutional rights. *See Gilmore*, 92 F. App'x at 190; *Heyne*, 655 F.3d at 564. Therefore, Plaintiff's Fourteenth Amendment Procedural Due Process Clause claim against Defendants regarding the grievance process is subject to dismissal for this reason alone. Even setting aside this issue, as explained below, Plaintiff fails to state a Fourteenth Amendment Procedural Due Process Clause claim regarding the grievance process.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. See *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23

F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Here, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process.

Additionally, Plaintiff alleges that "the people that reviewed [his] grievance . . . never put an end" to Plaintiff's food being poisoned, and that it was still occurring at the time that Plaintiff filed his complaint in February 2026. (Compl., ECF No. 1, PageID.4.) The alleged failure to act on information contained in a grievance is insufficient to establish that a certain individual committed a constitutional violation. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment Procedural Due Process Clause claims regarding the grievance process will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: August 20, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge